STATE of Missouri EX REL. Donald Orel WRATCHFORD, Dana D. Ruhl, and David L. Wratchford, Relators,

v.

The Honorable Thomas C. FINCHAM, Respondent.

WD 80498

Missouri Court of Appeals, Western District.

Filed: July 5, 2017

David Preston Crandall, Overland Park, Kansas, for relators.

Diane Kay Hook, St. Joseph, Missouri, for respondent.

Before Writ Division: Alok Ahuja, P.J., and Victor C. Howard and Karen King Mitchell, JJ.

Alok Ahuja, Judge

Relators Donald Orel Wratchford, Dana D. Ruhl, and David L. Wratchford filed a petition for a writ of prohibition to prevent Respondent Judge Thomas C. Fincham from proceeding further in a civil suit currently pending against them in the Circuit Court of Platte County. In the underlying action the plaintiff alleges that the Rela-tors are in possession of assets of their deceased parents, which should be made available to discharge the parents' debts for nursing home care. Relators argue that the claims asserted against them are for discovery of assets, which must be pursued in the probate division of the circuit court, and that Respondent was therefore required to dismiss the underlying civil action. We issued a preliminary writ, which we now make permanent.

### Factual Background

The Relators are the children of husband and wife Donald Lee Wratchford and Mona S. "Bobbie" Wratchford, both of whom are now deceased ("Parents"). The underlying action was filed in the circuit court by PGVN, LLC, doing business as Garden Valley Nursing and Rehabilitation Center. Garden Valley operates a nursing home in Kansas City.

In its Second Amended Petition, Garden Valley alleges that Donald Lee Wratchford died on September 18, 2015, and that Mona Wratchford died on December 4, 2016. The petition alleges that, before they passed away, Parents resided in Garden Valley's nursing home, and incurred charges for medical and residential care which have not been paid. Garden Valley alleges that, as of the date of Mona Wratchford's death, Parents had incurred total unpaid charges of $76,032.12.

The Second Amended Petition alleges that Relator Donald Orel Wratchford ("Orel") acted as the attorney-in-fact for both Parents since their execution of powers of attorney in 2013. The petition alleges that, in his role as attorney-in-fact, Orel failed to use Parents' assets to pay their expenses, but instead took possession of those assets, and used certain of those assets to pay his personal expenses. The petition alleges that Orel "has funds belonging to or that should belong to [Par-

ents] or their Estates in his possession or under his control and has failed and continues to fail to use those funds to pay for the necessary medical services rendered to them." The petition also alleges that any property of Parents which Orel used for his personal expenses during their lifetimes "should also be an asset of their Estates and available to pay the claims of the creditors of the same."

The Second Amended Petition further alleges that all three of the Relators are Parents' heirs at law, and are the beneficiaries of "transfer on death" designations attached to Parents' assets. The petition alleges that Relators "claim or have claimed an interest in the cash assets, bank accounts, investment accounts and other accounts which should be an asset of the Estates of [Parents] available to pay the claims of the creditors of the same."

Garden Valley's Second Amended Petition prays

that the Court discover or allow [Garden Valley] to discover the assets of [Parents] and [Orel] to the extent that he used their assets, determine the ultimate title and right of possession thereto, determine the persons who have an interest in the personal property, and the nature and extent of such interest in the property of the Decedent, to direct the delivery of title and possession of the property to the persons determined to have the right thereto, render judgment in favor of the [Garden Valley] for all losses, expenses and damages, late fees, attorney's fees and costs, for pre and post judgment interest at the highest rate allowed by law, and for such other and further Orders as are just and proper.

Relators moved to dismiss the claims asserted against them. They argued that, pursuant to § 473.340, RSMo, Garden Valley's claims could be brought solely in a discovery of assets proceeding in the probate division of the circuit court. Relators also argued that Garden Valley lacked standing to assert claims on behalf of Parents or their estates, because Garden Valley was not the personal representative of the estate of either parent. After the circuit court denied the Relators' motion to dismiss, they filed their writ petition in this Court.

## Analysis

Relators argue that they are entitled to a writ of prohibition ordering Respondent to take no further action in the underlying case, because Garden Valley's claims must be brought in a discovery of assets proceeding in the probate division, and because Garden Valley lacks standing to pursue claims on behalf of Parents or their estates. Because we conclude that Garden Valley's claims must be pursued in a discovery of assets proceeding in the probate division, we make our preliminary writ permanent without addressing the standing issue.

Prohibition is an original remedial writ brought to confine a lower court to the proper exercise of its jurisdiction. This Court has the authority to "issue and determine original remedial writs." Mo. Const. art. V, sec. 4.1. A writ of prohibition is appropriate to preserve the orderly and economical administration of justice, or where there is an important question of law decided erroneously that would otherwise escape review by this Court, and the aggrieved party may suffer considerable hardship and expense as a consequence of the erroneous decision.

*State ex rel. White Family P'ship v. Roldan*, 271 S.W.3d 569, 572 (Mo. banc 2008) (citations, internal quotations marks, and footnotes omitted). "Prohibition is a discretionary writ that only issues to prevent an

abuse of judicial discretion, to avoid irreparable harm to a party, or to prevent exercise of extrajurisdictional power." *State ex rel. Schwarz Pharma, Inc. v. Dowd*, 432 S.W.3d 764, 768 (Mo. banc 2014) (citation omitted).

■ All of Garden Valley's claims against Relators allege that the Relators are in possession of, or claim an interest in, property which Garden Valley contends should be part of Parents' estates, and should be available to discharge the Parents' debts to Garden Valley. Garden Valley alleges no direct claims against Relators on its own behalf, but instead seeks to benefit indirectly by augmenting the assets in Parents' estates which would be available to satisfy Garden Valley's claims. Garden Valley's claims against Relators seek "discovery of assets." "As its name implies, a discovery of assets action is a search for assets belonging to the decedent at her death." *Est. of Ridgeway*, 369 S.W.3d 103, 106 (Mo. App. E.D. 2012) (citation omitted). "A discovery of assets proceeding is an action to determine a decedent estate's title, right to possession, or both of specific property." *Est. of Williams v. Williams*, 12 S.W.3d 302, 305 (Mo. banc 2000).

Section 473.340.1, RSMo, provides:

Any personal representative, administrator, creditor, beneficiary or other person who claims an interest in property which is claimed to be an asset of an estate or which is claimed should be an asset of an estate may file a verified petition in the probate division of the circuit court in which said estate is pending seeking determination of the title, or right of possession thereto, or both. The petition shall describe the property, if known, shall allege the nature of the interest of the petitioner and that title or possession of the property, or both, are being adversely withheld or claimed. The court may order the joinder, as a party, of any person who may claim an interest in or who may have possession of any such property.

*See generally Est. of Ellis*, 187 S.W.3d 344, 350-53 (Mo. App. S.D. 2006) (describing procedure in discovery of assets proceedings).

. The Missouri Supreme Court has unambiguously declared that "[t]he probate division of the circuit court has original and exclusive jurisdiction over a proceeding to discover assets pursuant to sec. 473.340." *Williams*, 12 S.W.3d at 305; *see also Ryan v. Spiegelhalter*, 64 S.W.3d 302, 305 (Mo. banc 2002); *Est. of Boatright*, 88 S.W.3d 500, 505 (Mo. App. S.D. 2002).[1] *Williams* explained that "[t]he self-evident purpose of sec. 473.340 is to channel all claims to specific property in which an estate may have an interest into the probate division of the circuit court...." *Id.* at 306-07. In light of the clear directive of the Supreme Court in *Williams* and *Spiegelhalter*, the circuit division had no authority to determine Garden Valley's claims.

---

[1]. In *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249 (Mo. banc 2009), the Missouri Supreme Court explained that courts had used the term "jurisdiction" overbroadly and imprecisely, and that, henceforth, "the courts of this state should confine their discussions of circuit court jurisdiction to constitutionally recognized doctrines of personal and subject matter jurisdiction." *Id.* at 254. We recognize that, in light of *Webb*, the issue in this case concerns the respective *authority* of the circuit and probate divisions of the circuit court, rather than the court's constitutionally-defined personal or subject matter *jurisdiction*. *See* DAVID M. ENGLISH, 5A MISSOURI PRACTICE: PROBATE LAW AND PRACTICE § 489.50 (2017 supp.). Nevertheless, because the prior judicial decisions addressing the issue use the expressions "exclusive jurisdiction" and "concurrent jurisdiction," we follow suit in this opinion for consistency's sake.

In opposing Relators' writ petition, Garden Valley acknowledges that, "after the death of Mona Wratchford, the claims for non-payment of the Plaintiff's services, were more properly a Discovery of Assets proceeding." Although acknowledging that its claims were for discovery of assets, Garden Valley argues that its claims did _not_ fall within the probate division's exclusive jurisdiction, because "[t]hat specific holding in Williams v. Williams, received negative treatment" in _Ryan ex rel. Estate of Reece v. Reece_, 31 S.W.3d 82 (Mo. App. W.D. 2000).

There are at least two problems with Garden Valley's argument. First, of course, this Court has no authority to overrule decisions of Missouri's Supreme Court. _See, e.g., McMillan v. Pilot Travel Ctrs., LLC_, 515 S.W.3d 699, 706 (Mo. App. E.D. 2016); _Doe v. Roman Catholic Diocese of St. Louis_, 311 S.W.3d 818, 822-23 (Mo. App. E.D. 2010). To the contrary, the Missouri Constitution specifies that the Supreme Court's "decisions shall be controlling in all other courts." Art. V, § 2. Whether or not _Reece_ gave "negative treatment" to the Supreme Court's _Williams_ decision is irrelevant.

In any event, _Reece_ involved a fundamentally different claim than the ones asserted here, and in _Williams_. The claim in _Reece_ was that the father of an incompetent minor had mishandled the minor's personal injury claim, resulting in a smaller recovery to the minor's estate than could have been achieved. As we explained in a later appeal, the claim in _Reece_ was "not based on an allegation that [the father] converted or took from the estate specific funds or property." _Ryan v. Reece_, 62 S.W.3d 417, 421 (Mo. App. W.D. 2001); _see also Spiegelhalter_, 64 S.W.3d at 306 (in _Reece_ and similar cases, "the claims were not for the discovery of any specific 'piece of property,' as is required by the statute,

but were instead clearly tort claims" for breach of fiduciary duty or legal malpractice). In this case, in contrast to _Reece_, Garden Valley's claims seek recovery of property allegedly belonging to Parents' estates, not damages for a tort committed against Parents. Under _Williams_ and _Spiegelhalter_, this is precisely the kind of "discovery of assets" claim over which the probate division has exclusive jurisdiction.

Although not cited by the parties, we note that the Missouri Supreme Court has held in a separate line of cases that circuit divisions have concurrent jurisdiction with probate divisions to adjudicate certain claims involving property in which a decedent may have an interest. Thus, in _Jarman v. Eisenhauer_, 744 S.W.2d 780 (Mo. banc 1988), the Supreme Court reversed a circuit court's dismissal of a declaratory judgment filed by a plaintiff who was listed as a joint tenant with a decedent on certain certificates of deposit, and who claimed that—upon the decedent's death— the plaintiff became the certificates' sole owner. The circuit court had dismissed the action on the basis that "the probate division of the circuit court had exclusive jurisdiction under discovery of assets proceeding." _Id._ at 781. The Supreme Court reversed, and explained:

> The Court holds the circuit court had jurisdiction to determine the ownership of the joint certificates of deposit, joint money market certificates, and jointly named securities, and that **such jurisdiction is concurrent with the jurisdiction of the probate court in discovery of assets proceedings.**

_Id._ at 782 (emphasis added).

The Court reached the same result in _Lynch v. Lynch_, 260 S.W.3d 834 (Mo. banc 2008), in which the plaintiffs sought to place a constructive trust on certain property placed into a trust by a decedent, based on their contention that they were

entitled to a share of the property under the valid provisions of the trust agreement. *Id.* at 836. Citing *Jarman*, the Supreme Court held that "Plaintiffs had a choice to either file a constructive trust cause of action in the circuit court or to file a discovery of assets suit in the probate division under section 473.340, RSMo 2000." *Id.* (footnote omitted).

The holding of *Jarman* and *Lynch*—that the circuit and probate divisions have *concurrent* jurisdiction over claims which could be pursued in a discovery of assets proceeding—has been followed in at least two other post-*Williams* cases. *See Taylor-McDonald v. Taylor*, 245 S.W.3d 867, 874–75 (Mo. App. S.D. 2008); *Robertson v. Robertson*, 15 S.W.3d 407, 419–21 (Mo. App. S.D. 2000).

The holdings of *Williams* and *Spiegelhalter*, on the one hand, and of *Jarman* and *Lynch*, on the other, appear to be conflicting: *Williams* holds that the probate division has *exclusive* jurisdiction over discovery of assets proceedings, so that "all claims to specific property in which an estate may have an interest [are channeled] into the probate division of the circuit court," 12 S.W.3d at 306-07; while *Jarman* holds that the circuit and probate divisions have *concurrent* jurisdiction of such claims. Unfortunately, the decisions in each line of cases do not cite to the other, or attempt to reconcile the various decisions.

██ Absent a clear statement to the contrary, we will not presume that any of these seemingly conflicting Supreme Court decisions were intended to overrule the others. The Supreme Court has frequently admonished that "this Court presumes, absent a contrary showing, that an opinion of this Court has not been overruled *sub silentio.*" *Watson v. State*, No. SC95665, 520 S.W.3d 423, 437 n.7, 2017 WL 1629372, at *11 n.7 (Mo. banc May 2, 2017) (citing

*State v. Honeycutt*, 421 S.W.3d 410, 422 (Mo. banc 2013)); *see also, e.g., Boland v. St. Luke's Health Sys., Inc.,* 471 S.W.3d 703, 709 (Mo. banc 2015); *State ex rel. Beisly v. Perigo,* 469 S.W.3d 434, 440 (Mo. banc 2015). As this Court recently explained,

> Supreme Court decisions that have not subsequently been criticized, modified, or overruled are controlling authority. We do not presume the Supreme Court has overruled its previous decision unless it proclaims otherwise.

*McMillan v. Pilot Travel Centers, LLC*, 515 S.W.3d 699, 706 (Mo. App. E.D. 2016) (citations omitted).

The two lines of seemingly conflicting decisions can be reconciled. The plaintiffs in *Williams* and *Spiegelhalter* alleged that the defendants were in possession of assets which properly belonged to the decedent's estates. *See Williams*, 12 S.W.3d at 303-04 (plaintiffs claimed that decedent's mother wrongfully redirected annuity payments to herself following decedent's death, when those annuity payments properly belonged to decedent's estate); *Spiegelhalter*, 64 S.W.3d at 304-05 (claim that third party wrongfully retained proceeds of sale of real property belonging to decedent). Notably, in neither of these cases did the plaintiffs allege that they themselves had any direct rights in the assets in controversy. Instead, the plaintiffs stood to benefit indirectly or derivatively if property was returned to the decedents' estates, since they had claims against the estates. These cases could be considered "traditional" discovery of assets proceedings, namely, "a search for assets belonging to the decedent at her death." *Ridgeway*, 369 S.W.3d at 106.

The claims in *Jarman* and *Lynch* were fundamentally different. In each of those cases, the plaintiff claimed to have a direct,

personal interest in property in which it was claimed that the decedent also had an interest at the time of death. *See Jarman,* 744 S.W.2d at 781 (plaintiff claimed to own certificates of deposit, based on fact that plaintiff was listed on certificates as a joint tenant with decedent); *Lynch,* 260 S.W.3d at 836 (plaintiffs sought to place a constructive trust on property in which they claimed a direct personal interest based on operative provisions of trust agreement).

Construing these cases together, they hold that where a plaintiff contends that property should be returned to the decedent's estate, and should thereafter be available to satisfy the plaintiff's claim, such a discovery of assets proceedings falls within the exclusive jurisdiction of the probate division. If, however, the plaintiff claims a direct interest in particular property in which the decedent may also hold an interest, then the plaintiff may pursue his or her claim in the circuit division, or in the probate division, at the plaintiff's option.[2]

In this case, Green Valley does not claim any direct interest in property formerly owned by Parents, but now held by the Relators. Instead, Green Valley seeks to have property held by the Relators returned to their Parents' estates, so that those assets are available to satisfy Green Valley's claim for unpaid nursing home charges. Thus, this case is similar to *Williams* and *Speigelhalter,* rather than to *Jarman* or *Lynch,* and is subject to *Williams'* holding that "[t]he probate division of the circuit court has original and exclusive jurisdiction over a proceeding to discover assets pursuant to sec. 473.340." 12 S.W.3d at 305.

## Conclusion

The claims asserted by Garden Valley against the Relators are discovery of assets claims which must be pursued in the probate division of the circuit court. The circuit court should have granted Relators' motion to dismiss. We make our writ of prohibition permanent, and direct that that the circuit court take no further action in

2.  The distinction we draw has some historical justification. *Jarman* noted that earlier versions of § 473.340 "limited the parties entitled to initiate discovery of assets proceedings, limited the type of property allegedly withheld, and further limited the proceeding to an effort to bring claimed assets into the estate"; "[t]he current statute is much broader." 744 S.W.2d at 781. As this Court observed in *Estate of Lloyd,* 676 S.W.2d 889 (Mo. App. S.D. 1984), § 473.340 was "amended several times in the last few years"; "[t]he amendments have tended to expand the jurisdiction of the probate division." *Id.* at 890 (footnote omitted). The conflicts between the jurisdiction of the circuit and probate divisions have arisen in large part as a result of the broadening of the scope of the discovery of assets remedy; the question which has repeatedly arisen is whether expansions of the discovery of assets remedy have the effect of limiting the circuit court's pre-existing authority. *See generally* JOHN A. BORRON, JR., 5A MISSOURI PRACTICE: PROBATE LAW AND PRACTICE

§ 489, at 56-57, and §§ 866, 868 (3d ed. 1999). The cases which fall within the probate division's *exclusive* jurisdiction roughly correspond to the cases described in the pre-1973 version of § 473.340, which was limited to claims "that any person has concealed or embezzled, or is otherwise wrongfully withholding any personal property of the decedent and has it in his possession or under his control." § 473.340, RSMo 1969.

We acknowledge the distinction we have drawn does not explain the holding in *Robertson v. Robertson,* 15 S.W.3d 407 (Mo. App. S.D. 2000), in which the plaintiffs sought to have a deed executed by the decedent set aside, and the subject property returned to the decedent's estate. Relying on *Jarman,* *Robertson* held that the circuit division had concurrent jurisdiction with the probate division over the plaintiffs' claim. *Robertson* was decided just two months after the Supreme Court's decision in *Williams,* and in our view is inconsistent with *Williams.*

the underlying proceeding, other than to enter an order dismissing the case without prejudice.[3]

All concur.

---

**3.** Counts II, III and IV of Garden Valley's Second Amended Petition appear to assert claims against Parents' estates, rather than against Relators. Parents' estates are not named as defendants in the Second Amended Petition, however; the only named defendants are the Relators. Our holding that the claims against Relators must be pursued in the probate division requires dismissal of the entire action, not just particular counts.

We also note that § 476.410, RSMo provides that "[t]he division of a circuit court in which a case is filed laying venue in the wrong division or wrong circuit shall transfer the case to any division or circuit in which it could have been brought." Under this statute, transfer to the appropriate probate division, rather than dismissal, would ordinarily be the proper remedy. *Hall v. Podleski*, 355 S.W.3d 570, 577 n.10 (Mo. App. S.D. 2011). In this case, however, neither party has suggested that transfer to another division or circuit is the proper remedy, nor have they identified the division or circuit to which transfer would be appropriate.